IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHRISTOPHER SHOWMAKER, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:20-CV-00180 |
| | § | |
| TAOS SKI VALLEY, | § | |
| DEFENDANT. | § | |

---

### ORIGINAL COMPLAINT

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Christopher Showmaker ("**Showmaker**") and files his Original Complaint, respectfully showing as follows:

### I. Parties

1.      Showmaker is a Texas citizen within the meaning of 28 U.S.C. § 1332 and a resident of Tarrant County, Texas.

2.      Defendant **Taos Ski Valley** ("**TSV**") is, upon information and belief, the corporation with the legal name of Taos Ski Valley, Inc., which conducts business as and holds itself out under the unregistered assumed name of "Taos Ski Valley", and is a New Mexico corporation with a principal place of business in New Mexico, and is a New Mexico citizen within the meaning of 28 U.S.C. § 1332, and can be served with process by delivering the same to its **registered agent Joseph F. Canepa** at **200 W. Devargas Street, Suite 7, Santa Fe, New Mexico 87501**.

## II. Jurisdiction & Venue

3.        This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

4.        Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b)(1) because TSV resides in the Northern District of Texas because: (1) TSV is an entity with the capacity to sue and be sued in its common name under applicable law; and (2) TSV is subject to this Court's personal jurisdiction with respect to this civil action because (a) TSV has sufficient minimum contacts with State of Texas and the Northern District of Texas, (b) maintaining suit in the State of Texas and the Northern District of Texas will not offend traditional notions of fair play and substantial justice.

5.        TSV has purposefully availed itself to jurisdiction in the State of Texas and the Northern District of Texas and should have reasonably anticipated being haled into court in the State of Texas and the Northern District of Texas.  Specific jurisdiction exists because TSV advertised to and solicited, by print and internet and otherwise, Showmaker to travel, stay, and utilize its facilities while Showmaker was present in the State of Texas and the Northern District of Texas.  General jurisdiction exists because TSV's contacts are so continuous and systematic as to render TSV at home in the State of Texas and the Northern District of Texas.

6.        TSV: (1) directly targets its website (www.skitaos.com) to the State of Texas and the Northern District of Texas; and (2) knowingly conducts business with residents of the State of Texas and the Northern District of Texas through such website.  In fact, the patronage of Texas citizens is the key to TSV's financial sustainability and success.  Through its website, TSV offers and solicits citizens and residents of the State of Texas and the Northern District of

Texas, among other things, to purchase ski lift tickets, book lodging accommodations, and book air travel by private shuttle flight on "Taos Air" from Dallas, Texas to Taos, New Mexico so that such citizens and residents can patronize TSV's business.  As intended, TSV conducts a substantial amount of business with citizens and residents of the State of Texas and the Northern District of Texas through its website.

7.      According to an article published in the Dallas Morning News, 1,750 people flew from Dallas, Texas to Taos, New Mexico during the 2018-19 ski season.  Starting on December 19, 2019, and to conclude on March 20, 2020, TSV's "Taos Air" airline service began operating three roundtrip flights each week between Dallas Love Field and Taos Regional Airport at a cost of $160 to $420 each way.  Upon arrival at Taos Regional Airport, passengers are provided transportation to TSV's facilities as well as ski rentals for up to four days.  In the article, David Norden, the CEO of TSV, is quoted as saying "We [TSV] did everything we could to make it simple [for Texas citizens and residents] to get here and to the resort.  Last year went even better than we anticipated."  This article notes that TSV "is trying hard to compete for Texas customers after undergoing a $300 million renovation[.]"

### III.  Facts

8.      TSV owns and operates all relevant ski areas in Taos Ski Valley, New Mexico.

9.      Showmaker is an experienced and skilled snow skier who has skied the Taos Ski Valley intermittently for more than 30 years without incident or accident.

10.     On or about February 26, 2017, Showmaker was a guest and an invitee at the ski area TSV operates.  Showmaker was severely injured near the intersection of the ski trails TSV calls White Feather/Firlefanz and Lower Stauffenberg (just past the split for Tell Glade) when he was tripped by an unmarked, plain rope barricade TSV had drawn across the path of the

convergence of these trails at a height that placed it within the height of Showmaker's legs.  The rope barricade had no flags, color schemes, or other devices that would draw attention to its placement.

11.    As a result of his impact with this rope barricade, Showmaker immediately felt pain in his legs before being ejected into the air.  Upon landing, Showmaker's head slammed into the hard-packed snow, which caused him to lose consciousness.  At some unknown point later in time, Showmaker regained consciousness and immediately experienced severe pain throughout his body, including his head, shoulder, hand, and legs.  Showmaker's mobile phone was damaged as a result of the incident, which prevented him from calling for assistance or taking pictures of the rope barricade.  With no other option, Showmaker slowly trekked down to a base point, which caused even more pain.

12.    When he finally reached the base point, Showmaker immediately hailed ski patrol and was transported to a hospital where he was examined and then diagnosed with an acromioclavicular separation in his right shoulder, head trauma, and a broken metacarpal bone in his left hand.  Showmaker was treated on a triage basis and then discharged with instructions to follow up later with a medical provider.

13.    Shortly after returning home from Taos Ski Valley, Showmaker sought medical treatment due to ongoing pain in his left hand and was diagnosed with a comminuted fracture of the base of his left first metacarpal with shortening of the ray and separation of articular fragments.  Showmaker was informed that his injury was severe and learned that he would likely suffer post-traumatic arthritis, regardless of medical treatment.

14.    Showmaker underwent surgery to his hand that same day upon the recommendation of the medical provider.  During surgery, the medical provider discovered

4

multiple fragments, which prevented an adequate closed reduction procedure.  Therefore, the medical provider had no choice but to extemporaneously perform an open reduction procedure instead.  Showmaker was later discharged that same day.

15.    Showmaker also sought treatment and relief for the effects and pain to the other areas of his body.  Although he has completed his medical treatment at this time (because he has reached terminal limit of improvement), Showmaker still experiences pain and discomfort from injuries sustained in this incident, including severe headaches on a daily basis.  As such, Showmaker in reasonable medical probability will require additional medical treatment for these injuries in the future, and he will continue to endure pain and suffering for the remainder of his life.

16.    Showmaker was not the only person injured by the rope barricade that day.  The next morning, Showmaker was in a restaurant prior to departing Taos where he ran into another individual who informed Showmaker that he, too, had been injured by the same rope barricade before Showmaker was also injured.  Despite request, this individual declined to provide Showmaker with his name or contact information because he stated that he worked for TSV and did not want to cause any trouble for himself.

17.    Pursuant to New Mexico Statute § 24-15-7, TSV had a statutory duty to: (1) mark in a plainly visible manner those slopes, trails, or areas that were closed at the top or entrance or at the point of the obstacle or hazard with the appropriate symbols as are established or approved by the national ski areas association or by the New Mexico ski area operators association; (2) designate by trail board or otherwise at the top of or entrance to the subject trail or slope which trails or slopes are open or closed; and (3) warn of or correct particular hazards or dangers known to TSV where feasible to do so.

18.     In violation of New Mexico Statute § 24-15-7, TSV failed to: (1) mark in a plainly visible manner those slopes, trails, or areas that were closed at the top or entrance or at the point of the obstacle or hazard with the appropriate symbols as are established or approved by the national ski areas association or by the New Mexico ski area operators association; (2) designate by trail board or otherwise at the top of or entrance to the subject trail or slope which trails or slopes are open or closed; and/or (3) warn of or correct particular hazards or dangers known to TSV where feasible to do so.

19.     Without limiting the foregoing, TSV breached its statutory duties by: (1) failing to mark in a plainly visible manner closure of the Lower Stauffenberg trail because TSV failed to mark the same at the top or entrance or at the point of the hazard, and the rope barricade had no flags, color schemes, or other devices that would draw attention to its placement; (2) failing to designate by trail board or otherwise at the top of or entrance to the Lower Stauffenberg trail that such trail was closed; (3) failing to warn Showmaker of the hazard and danger by the inconspicuous rope barricade when TSV new of the same and when it was feasible for TSV to do so; and (4) failing to correct the hazard and danger posed by the inconspicuous rope barricade when TSV knew of the same and when it was feasible for TSV to do so.

20.     TSV's breach of these statutory duties proximately caused Showmaker to suffer injury.  Showmaker is entitled to recover as damages from TSV the costs and expenses of medical treatment in the past and to be incurred in reasonable medical probability in the future as well as damages for past and future pain, suffering, disfigurement, mental anguish, physical impairment, and loss of services, as well as exemplary damages, attorneys' fees, litigation expenses, court costs, and pre- and post-judgment interest.

## IV.  <u>Causes of Action</u>

21.     All conditions precedent to Showmaker's recovery have occurred or have been waived, excused, or otherwise satisfied.  All notices required have been provided or waived, excused, or otherwise satisfied.

22.     Showmaker repeats and incorporates all of the allegations set forth in paragraphs 1-21 in support of each cause of action for which such facts pleaded support recovery, including but not limited to the following cause of action.

23.     The New Mexico Ski Safety Act defines those areas of responsibility and affirmative acts for which "ski area operator" shall be liable for loss, damages, or injury.  New Mexico Statute § 24-15-2.  TSV is a "ski area operator" within the meaning of the statute because TSV has operational responsibility for the Taos Ski Valley ski area.

24.     Pursuant to New Mexico Statute § 24-15-7, TSV had a statutory duty to: (1) mark in a plainly visible manner those slopes, trails, or areas that were closed at the top or entrance or at the point of the obstacle or hazard with the appropriate symbols as are established or approved by the national ski areas association or by the New Mexico ski area operators association; (2) designate by trail board or otherwise at the top of or entrance to the subject trail or slope which trails or slopes are open or closed; and (3) warn of or correct particular hazards or dangers known to TSV where feasible to do so.

25.     In violation of New Mexico Statute § 24-15-7, TSV failed to: (1) mark in a plainly visible manner those slopes, trails, or areas that were closed at the top or entrance or at the point of the obstacle or hazard with the appropriate symbols as are established or approved by the national ski areas association or by the New Mexico ski area operators association; (2) designate by trail board or otherwise at the top of or entrance to the subject trail or slope which

trails or slopes are open or closed; and/or (3) warn of or correct particular hazards or dangers known to TSV where feasible to do so.

26.     Without limiting the foregoing, TSV breached its statutory duties by: (1) failing to mark in a plainly visible manner closure of the Lower Stauffenberg trail because TSV failed to mark the same at the top or entrance or at the point of the hazard, and the rope barricade had no flags, color schemes, or other devices that would draw attention to its placement; (2) failing to designate by trail board or otherwise at the top of or entrance to the Lower Stauffenberg trail that such trail was closed; (3) failing to warn Showmaker of the hazard and danger by the inconspicuous rope barricade (which was neither plainly visible nor plainly marked) when TSV new of the same and when it was feasible for TSV to do so; and (4) failing to correct the hazard and danger posed by the inconspicuous rope barricade when TSV knew of the same and when it was feasible for TSV to do so.

27.     Pursuant to New Mexico Statute § 24-15-11, a ski area operator such as TSV shall be liable for loss or damages caused by the failure to follow the duties set forth in the statute where such violation of duty is causally related to the loss or damage suffered, and shall continue to be subject to liability in accordance with common-law principles of vicarious liability for the willful or negligent actions of its principals, agents, or employees that cause injury to another person.

28.     Before, at the time of, and after the incident that caused his injuries, Showmaker complied with all duties required of him as set forth in New Mexico Statute § 24-15-10.

29.     TSV violated its statutory duties as described abvoe, and these violations are causally related to the loss or damage Showmaker suffered.  Therefore, Showmaker is entitled to recover as damages from TSV the costs and expenses of medical treatment in the past (being no

less than $23,486.60) and to be incurred in reasonable probability in the future as well as damages for past and future pain, suffering, disfigurement, mental anguish, physical impairment, and loss of services, as well as exemplary damages, attorneys' fees, litigation expenses, court costs, and pre- and post-judgment interest. Though the trier of fact will ultimately affix the amount of these unliquidated damages, Showmaker seeks to recover no less than $100,000 from TSV.

## V.  Jury Demand

30.    Showmaker requests a trial by jury.

## VI.  Prayer

**WHEREFORE, PREMISES CONSIDERED,** Showmaker prays the Court enter judgment in his favor against TSV for all relief requested herein or that are available under these facts and award Showmaker all such other and further relief, both general and special, at law or in equity, to which he may be entitled.

Respectfully submitted,

**PATEL GAINES, PLLC**
221 West Exchange Ave., Suite 206A
Fort Worth, Texas 76164
www.patelgaines.com
(817) 394-4844 | Telephone
(817) 394-4344 | Facsimile

By:  */s/ Lance H. "Luke" Beshara*
Lance "Luke" H. Beshara
Texas State Bar No. 24045492
lbeshara@patelgaines.com

**ATTORNEYS FOR SHOWMAKER**